**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas JOHNSON, Defendant-Appellant.**

**No. 16256.**

United States Court of Appeals
Seventh Circuit.

July 19, 1968.

1. (1959), 360 U.S. 564, 591, 79 S.Ct. 1335, 3 L.Ed.2d 1434.

2. Booth v. Fletcher (1938), 69 App.D.C. 351, 101 F.2d 676, 679.

Charles Durham, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Michael P. Siavelis, Atty., Chicago, Ill., for appellee; John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel.

Before HASTINGS, Circuit Judge, KNOCH, Senior Circuit Judge, and SWYGERT, Circuit Judge.

KNOCH, Senior Circuit Judge.

The defendant-appellant, Thomas Johnson, was convicted in a jury trial on a three-count indictment charging violations of Title 26, U.S.Code, § 7214(a) (4):

(a) Unlawful acts of revenue officers or agents.—Any officer or employee of the United States acting in connection with any revenue law of the United States—* * * (4) who conspires or colludes with any other person to defraud the United States; * * *

The jury found the defendant guilty. He was sentenced to serve eighteen months' imprisonment.

The indictment charged that the defendant, being an employee of the Internal Revenue Service and acting in connection with the Revenue Laws conspired with James Storey, Tommie Smith and Leonard Dickerson to defraud the United States by wilfully aiding in the preparation and presentation of income tax returns materially false and fraudulent in the improper claim of unwarranted exemptions.

The three unindicted co-conspirators testified as witnesses. None of the returns were filled out at the Revenue offices but at the homes of the defendant, the witnesses or their relatives. At least two of the witnesses said they knew that defendant was employed by the Revenue Service and the third said he had been informed by his brother that the defendant was so employed. They all testified they were advised by the defendant respecting exemptions which they were not entitled to claim and that they relied on his experience. They relied on him to take their tax returns down to the

Revenue office, where defendant was employed, for process. As one witness put it: defendant "would be able to push it through the next morning, he took it in to work with him. * * * " Some said that defendant made no specific charge for his services in preparing returns. They paid the defendant $5 or $10 for his service.

The defendant testified that he filled out returns solely on the information given him by the witnesses and that the circumstances were such that in many cases the statements of the witnesses seemed to be corroborated e. g., defendant saw children in the home of one witness, saw him pay for their clothing and food, and thus accepted the assertion that these children were the taxpayer's dependents.

The Assistant Chief of Returns and Receipts Branch in the District Office of the Chicago District testified that during the period 1959 to 1963, when he was section chief in the Returns and Receipts Branch, defendant was successively employed as supervisory mail clerk, senior verification clerk, and tax examiner; that as a verification clerk, defendant was responsible for reviewing income tax returns to ascertain whether they were single or joint and whether they contained questionable exemptions, that as tax examiner his work also entailed review of the number of exemptions on a little more skilled level than as verification clerk.

The defendant testified that his duties as an examiner required him to check for questionable exemptions and to instruct the forty to one hundred fifty personnel under his supervision. He denied instructing any of them with respect to any returns which he personally prepared.

■ The defendant argues that the issue of credibility of the witnesses was vital to his defense and that the jury were not instructed on his theory of the case because the instruction which he tendered on "informers" was rejected. The Court stated that this was not an informer case. We agree. The three unindicted witnesses all testified that they

had been called in and questioned by Internal Revenue officers concerning their returns. They had each suffered penalty assessments in amounts greatly in excess of the refunds they had initially received on the basis of the false returns.

■ The instruction sought to be given read:

The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by his interest, or his prejudice against the defendant.

None of the three witnesses provided evidence for pay, immunity from prosecution or personal advantage. There was no evidence to support this instruction. Bird v. United States, 1902, 187 U.S. 118, 23 S.Ct. 42, 47, 47 L.Ed. 100; Beck v. United States, 10 Cir., 1962, 305 F.2d 595, 599, cert. den. 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123. When in chambers the District Judge stated that the proffered instruction was inapplicable, defendant's counsel merely stated that he was not going to withdraw it. In this Court, defendant conjectures that the three witnesses might have looked to be rewarded with a share if a fine had been imposed on defendant under Title 26 U.S.C. § 7214(a) (9). Under the circumstances of this case we consider this too speculative in nature to justify the informer instruction requested. United States v. Clancy, 7 Cir., 1960, 276 F.2d 617, 636, reversed on other grounds 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574.

■ No accomplice instruction was tendered here and none was given. In the course of oral argument, defense counsel invited our attention to McMillen v. United States, 1 Cir., 1967, 386 F.2d 29, at page 32, where the Court held failure to give an accomplice instruction constituted "plain error." However, it was only in connection with an instruction concerning the "presumption of truthfulness" of the witnesses that omission to include an instruction that testimony of accomplices should be scrutinized with caution was held to be "plain error" and even then, was not found to be reversible error with respect to all the defendants in that case.

The jury in the case before us was adequately instructed on the issue of credibility of witnesses and was not told that each witness who took the oath to tell the truth was to be presumed in the first instance to speak the truth, as the jury was informed in the *McMillen* case.

■ The defendant asserts that he was entitled to a judgment of acquittal because he was charged with violating § 7214(a) (4) which deals with unlawful acts of revenue officers or agents, acting in connection with any revenue law of the United States, who conspire or collude with others to defraud the United States. The defendant contends he was not charged with any wrongful acts under authority of the revenue laws in his capacity as an employee, officer or agent, but with preparing returns for others, an activity outside his duties, after working hours and outside the Revenue Service offices.

It is conceded that the defendant was employed by the Internal Revenue Service. He was an officer or agent. The statute in question does not require that he be acting under authority of the revenue laws. He was charged with acting in connection with the revenue laws and he was so acting in preparing returns even if he did so away from his office and after regular working hours.

Defendant relies on United States v. Gerdel, D.C.E.D.Mo.E.D., 1952, 103 F. Supp. 635. Gerdel was charged under § 4047(e) (2) predecessor statute to § 7214(a) (2) with which we are not here concerned. That statute dealt with "payment for performance of any duty." It was no part of Gerdel's duty to prepare returns at home and the Court so held. In United States v. Waldin, 3 Cir., 1958, 253 F.2d 551, cert. den. 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147, the Court was

**32**

considering a revenue employee charged under § 4047(e) (4), which calls for "acting under the authority of any revenue law," a limitation not included in the statute before us. Waldin allegedly accepted payment to forestall prosecution, although he had no authority to settle claims. The Third Circuit declined to apply Gerdel holding (pages 552–553) it a dangerous generalization to say that the same rules applied to all the subsections of § 4047(e) setting out different unlawful acts of revenue officers or agents.

The defendant would limit Waldin to its facts, i. e., Waldin promised to stop prosecution, but defendant did not promise that these returns would pass undetected, and, in fact, they did not go undetected. We cannot agree that the holding in Waldin may be so limited. We are satisfied that the conduct charged clearly falls within the scope of the broader statute before us.

This Court is grateful to Mr. Charles J. Durham of the Illinois bar who represented the defendant-appellant with skill and zeal as Court-appointed counsel.

The judgment of the District Court is affirmed.

Affirmed.