THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BENNY J. MUMFORD *et al.*, Defendants-Appellants.

First District (1st Division)    No. 77-1696

Opinion filed March 19, 1979.—Modified on denial of rehearing April 9, 1979.

Ralph Ruebner and Gary Jay Ravitz, both of State Appellate Defender's Office, of Chicago, for appellant Benny J. Mumford.

Richard E. Gorman, of Chicago, for appellant Willie Ray Rankins.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Nicholas P. Iavarone, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Benny J. Mumford and Willie Ray Rankins were jointly indicted and tried before a jury for the murder of Willie Yates. Both were convicted, Mumford on the theory of accountability. Mumford was sentenced to 15 to 20 years and Rankins to 25 to 35 years. Both have appealed.

In this court separate briefs have been filed for the defendants by different attorneys. Counsel for Mumford urges that the evidence was insufficient to convict on the basis of accountability; final argument of the prosecutor was improper and the trial court erred in giving the jury a confusing and misleading instruction on the issues. Counsel for Rankins urges that Rankins was improperly denied counsel of his own choosing; the defenses of the codefendants were antagonistic so there should have been a severance; the trial court improperly excluded an exhibit bearing on self-defense; the closing argument of the prosecutor was improper and the instruction on the issues was confusing and misleading.

The fiancee of the deceased testified that after the incident she saw her Ford automobile with bullet holes in the windshield which were not previously there. A police officer testified to finding the deceased lying

face down in the snow at about 11:30 p.m. on January 22, 1976. The automobile which deceased had driven stood nearby with bullet holes in the windshield. The engine was running.

Another witness, John Bishop, testified that he was drinking with friends on the date in question. He visited a liquor store with Mumford. Upon their return, Mumford remained on the first floor of an apartment building. The witness went to the second floor where he had more drinks with defendant Rankins, the latter's mother and Rankins' common-law wife. Shortly thereafter the witness went to the front porch. He saw Rankins and the deceased some 6 or 7 feet apart. The men were arguing. The deceased "made a move" and Rankins drew his gun and shot at him. The victim left and walked some 20 feet to an automobile he had been driving. The deceased entered the car and Rankins walked over to the driver's side. The witness heard two more shots. The deceased got out of the car. He walked "[s]lumped over like." The witness then left.

Another witness, Phyllis McCurry, who lived in the same building, went up the front stairs and saw a stranger talking with Rankins. The witness identified the stranger as the deceased. The victim told Rankins that he had sold him "bad dope." The victim said he "wanted his money back." The witness then went upstairs. She returned about 45 minutes later. Rankins and the deceased continued to talk. Rankins suggested to the deceased that they go outside to settle the matter. The witness saw Rankins with a gun in his hand. Mumford asked Rankins what was happening and took his arm. Rankins left the apartment. The witness then saw the deceased in the car and saw Rankins walking toward the car door. Rankins stood so that the car door was held open. Rankins then stepped back and fired twice. The deceased left the car. He was standing bent over. The witness then saw Mumford standing by the car. The witness also heard Mumford telling Rankins twice to shoot the victim. Mumford moved around the car and caught up with the deceased. Mumford then struck and kicked the deceased who fell to the ground. Rankins stood there, gun in hand. Shortly thereafter the witness heard Mumford tell other persons present to say nothing.

Another witness, Jerry Stamps, heard Rankins arguing with somebody on the second floor. He recognized the voice of the deceased. The argument continued on the outside porch. The witness saw Rankins, gun in hand, walk behind the deceased. Rankins asked a number of people if he should kill deceased. Several of these persons, including Mumford, urged him to do so on more than one occasion. Rankins then shot the victim. Mumford ran over to the victim in the middle of the street and struck him several times. The deceased fell with his face in the snow. Mumford then hit the deceased with a cupped hand up and down around

the head and neck. The witness did not know if Mumford had anything in his hand. Rankins then fired another shot.

A forensic pathologist testified that there was a bullet wound on the left side of the chest of deceased. This bullet had pierced the lung and heart and was the cause of death. There were three stab wounds at the base of the neck and one cutting wound on the nose. These wounds could not by themselves have caused death but could have been a contributory factor. Marks on the arms and hands of the deceased showed use of narcotics as did the presence of morphine in the body.

A witness named Willie Poe was the only witness for defendants. He testified that on the day in question deceased came to the Rankins' apartment and threatened Rankins' mother. Rankins told the deceased not to do this. The witness testified that the deceased had a bad reputation for violence. On cross-examination by the State, the witness testified that the argument between deceased and Mrs. Rankins was concerned with narcotics she had sold deceased. She might have been selling narcotics from the apartment in which defendant Rankins lived.

## I.

After verdict and before sentencing, counsel for both defendants joined in oral motions for new trial and arrest of judgment. No objection was made by the State. (See Ill. Rev. Stat. 1977, ch. 38, par. 116—1.) The trial court denied these oral motions. The State urges that failure of a defendant to raise issues in a written motion for new trial constitutes a waiver so that these issues cannot be urged as a ground for reversal on review. *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227, citing *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■■ In response defendant Mumford contends that the waiver rule should not be applied because the State did not object to the oral motions. We agree with this contention. Therefore we will not, in this opinion, depend upon the doctrine of waiver but we will consider each and all of the issues raised upon their merits.

## II.

On the issue of the guilt of Mumford based upon accountability, the statute defines a person guilty of criminal accountability (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)) as one who:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, * * * solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

No point is raised by defendant Rankins as to the sufficiency of the

evidence to prove him guilty of murder beyond reasonable doubt. Defendant Mumford urges that guilt of accountability presents a factual question. (*People v. Hubbard* (1973), 55 Ill. 2d 142, 302 N.E.2d 609.) This contention is well founded as an abstract matter but not in relation to the case at bar. It is correct that mere presence or negative acquiescence is not sufficient to prove accountability. However, presence at the scene of the crime is one among other circumstances which may be considered in determining the weight of the evidence of accountability. See *People v. Morgan* (1977), 67 Ill. 2d 1, 8-10, 364 N.E.2d 56. See also *People v. Tate* (1976), 63 Ill. 2d 105, 108-11, 345 N.E.2d 480.

■■ Defendant contends that the only conduct attributable to Mumford was his two statements to Rankins urging that the latter shoot the victim. This is not accurate. The uncontradicted evidence shows that Mumford was present before and during the commission of the crime; he asked Rankins what was happening; he left the porch and voluntarily joined Rankins in the close vicinity of the car at the time of the shooting; he made several statements urging that Rankins commit the murder; he moved around the car door apparently to hamper the victim from escaping; he struck the deceased twice; he struck the deceased several times up and down about the back of the neck with cupped hand and he requested other persons who saw the incident to say nothing. The back of the victim's neck was the area in which the pathologist noted three stab wounds which may have contributed to the death. However, the testimony of the pathologist considered with all the balance of the testimony above described is, in our opinion, ample to prove Mumford's guilt on the theory of accountability beyond reasonable doubt. As shown in *Hubbard*, 55 Ill. 2d 142, 147, "This was an issue of fact for the determination of the jury and its determination will be set aside by this court only where the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt."

■■ We also reject the argument in behalf of Mumford that the evidence showed only possible guilt as accessory after the fact. This argument is directed to the portion of the accountability statute using the words "Either before or during the commission of an offense * * *" in defining accountability as above quoted. This argument simply raises an issue of fact. There is evidence, as above set out, that defendant Rankins fired another shot after Mumford had struck the deceased behind the neck. Rankins fled after firing the last shot and the cases hold that a criminal act is not completed until the offender has escaped from the scene. (See *People v. Johnson* (1973), 55 Ill. 2d 62, 68, 302 N.E.2d 20, citing *People v. Golson* (1965), 32 Ill. 2d 398, 408, 207 N.E.2d 68.) This argument simply raises an issue of fact as to the time of termination of the offense which, in

our opinion, was properly determined by the jury upon evidence strong beyond reasonable doubt.

## III.

Counsel for both defendants claim error by virtue of improper closing argument. The prosecutor told the jury that Rankins claimed self-defense over a year after the incident and that this theory was "a gimmick." An objection was made to this argument but was overruled. Also the prosecutor told the jury several times that counsel for defendants were attempting to "fool" them and were "playing with the truth." The prosecutor also made a charge of trickery by the defense. Defendants urge that these comments were objected to. On the contrary, we find that no objection was made except with reference to the statement regarding trickery. At this point the defense counsel interposed a general objection. The prosecutor asked to be excused and stated that he had mentioned Mumford when he had actually intended to mention the name of a witness for the defense.

As a general matter this court will not consider allegedly prejudicial argument in the absence of an objection. If no objection is made, we will consider allegedly improper remarks only if they are, " ' * * * so prejudicial that defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process.' " *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 22, 337 N.E.2d 454, *appeal denied* (1976), 61 Ill. 2d 604, quoting from *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.

Both defendants also join in a charge of reversible error because the prosecutor told the jury that there had been evidence that defendant Rankins dealt in heroin and the prosecutor also stated that the victim "was a two-fold [*sic*] victim. He was a victim of the murder and you also heard he was a victim of heroin, he was a heroin addict." The prosecutor also said that "they" had sold out of the second floor apartment. Defendant Mumford urges that there was no evidence that he had dealt in drugs.

In response the State urges, and we agree, that the record does in fact support these statements. A number of witnesses testified that the incident was caused from an alleged sale of inferior drugs to the victim. The evidence of the pathologist that the victim was a heroin addict is uncontradicted. As regards use of "they" in final argument, the State correctly argues that the word was used once in a rather general statement without objection by defendants and was used a second time with reference to the testimony of the defense witness on this subject.

■ Concerning the argument of defendant Mumford, there is testimony that Mumford lived in the second floor apartment occupied by Rankins

and the latter's mother. In this regard, we granted leave to defendant Mumford to cite *People v. Valdery* (1978), 65 Ill. App. 3d 375, 378-79, 381 N.E.2d 1217, where this court stated, "[i]t is plain error for a prosecutor to imply that a defendant has committed other crimes than the one for which he is on trial." That statement is completely valid within the context of the factual situation presented by *Valdery* where the record did not support the prosecutor's statement. However, the statement has no relation to the case at bar where the evidence of the condition of the deceased as an addict and the activities of defendants are established by the evidence. Furthermore, since this evidence bearing upon the narcotic activities was proper as tending to show a motive for the killing (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489), this comment by the prosecutor thereon was also proper.

We have considered similar and even stronger argument by the State's Attorney in *People v. Smith* (1977), 53 Ill. App. 3d 395, 403-04, 368 N.E.2d 561, where we held that there was no prejudicial error because the final argument had not constituted:

> "* * * 'a material factor in the conviction * * *' (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363, quoting *People v. Swets* (1962), 24 Ill. 2d 418, 423, 182 N.E.2d 150), resulted in 'substantial prejudice to the accused' (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881), or 'the verdict would have been different had the improper closing argument not been made * * *' (*People v. Trice* (1970), 127 Ill. App. 2d 310, 319, 262 N.E.2d 276). Finally, we must consider the fact that 'both the court and counsel admonished the jury that counsel's remarks did not constitute evidence.' (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838.)"

■■ Upon consideration of the entire record and all of the contentions regarding allegedly improper final argument, we have concluded that there is no prejudicial error here.

## IV.

Both defendants urge error in connection with the issues instruction given by the trial court:

> "To sustain the charge of murder, the State must prove the following propositions:
>
> *First*: That the defendants performed the acts which caused the death of Willie B. Yates;
>
> *Second*: That when the defendants did so, they intended to kill or do great bodily harm to Willie B. Yates, or they knew that their acts would cause death or great bodily harm to Willie B. Yates, or

they knew that their acts created a strong probability of death or great bodily harm to Willie B. Yates.

*Third*: That the defendants were not justified in using the force which they used; and

*Fourth*: That the defendants did not believe that circumstances existed which justified the use of the force which they used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendants guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendants not guilty."

■■ As regards defendant Mumford, the prosecutor tendered this instruction at the conference. The trial court asked if there were any objections. Counsel for Mumford stated, "No objection." This was a waiver of any error in the instruction. The applicable rule provides that, "[t]he grounds of the objections shall be particularly specified." Ill. Rev. Stat. 1977, ch. 110A, par. 451(b); *People v. Springs* (1972), 51 Ill. 2d 418, 424, 283 N.E.2d 225.

■■ In addition, as regards both defendants, it has been repeatedly held by the courts of Illinois that no party may raise on appeal the failure of the trial court to give an instruction without tendering a proper proposed instruction to the trial court. (*People v. Underwood* (1978), 72 Ill. 2d 124, 129-30, 378 N.E.2d 513; *People v. Grant* (1978), 71 Ill. 2d 551, 557, 377 N.E.2d 4; *People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487.) Consequently, as to both defendants we find that any error in the above instruction has been waived. Defendant Rankins did in fact make an objection but he did not specifically point out the alleged defects in the instruction as proposed. Also he did not tender what he considered to be a proper instruction. Consequently we are obliged to conclude that the point has been waived by both defendants unless the giving of the instruction constituted such a substantial defect that it resulted in an unfair trial. *Grant*, 71 Ill. 2d 551, 558.

■■ As regards defendant Rankins' contention, the evidence against him is so overwhelming that we can declare beyond reasonable doubt that the instruction as given did not constitute a substantial defect so as to result in an unfair trial. Defendant Mumford argues that the instruction is erroneous because only Rankins used the theory of self-defense, a theory which Mumford never raised. We reject this contention. With Mumford, the issue was accountability and the trial court gave the accountability instruction which Mumford tendered. In addition, considering the instructions as a whole, as we are obliged to do (*People v. Stock* (1974), 56

Ill. 2d 461, 476, 309 N.E.2d 19), the trial court also instructed the jury that they were to give separate consideration to the case of each defendant and to the evidence presented against him. (Illinois Pattern Jury Instructions, Criminal, No. 3.05 (1st ed. 1968).) It should be noted that there is ample evidence in the record that defendant Mumford did use aggressive force against the deceased which, according to the expert testimony, may have contributed to his death. It is also correct, as the State points out, that the jury was given 12 forms of verdict, each with the name of the involved defendant. This insured that the jury actually decided the case against each defendant separately.

■■ Defendants also urge that the instruction is faulty because it uses the plural form as against both defendants. As the State points out, the same argument was raised and rejected in a rather similar situation involving two joint defendants. *People v. Mulford* (1943), 385 Ill. 48, 58, 52 N.E.2d 149.

In this regard, both defendants cite and rely upon *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532. It is clear from *Jenkins*, 69 Ill. 2d 61, 65, that the situation there involved two instructions on the issues which were directly contrary and contradictory. No such situation was presented by the case at bar. We note also that in *Jenkins* the defendant submitted an instruction which the court found proper. This was not done by either defendant in the instant case.

Furthermore, as regards defendant Rankins, there was no evidence presented by him which tended to prove self-defense. A witness for defendant testified in a general way that the deceased had a bad reputation for being a violent person. This conceivably may have been the foundation for a claim of self-defense, but no such edifice was ever erected upon the foundation. There is not a scintilla of evidence that the deceased acted aggressively in the encounter. On the contrary, the evidence is overwhelming that Rankins, as the aggressor, assisted by Mumford, followed the deceased to his car, shot him, pursued when the deceased sought refuge in flight and shot again. We find no error in the assailed instruction.

## V.

Defendant Rankins urges that he was deprived of his right to counsel of his own choice. The record shows that during December of 1977 attorney Sam Adam had filed an appearance on behalf of Rankins. However, the trial court was apprised of a letter which this attorney wrote to counsel for Mumford stating that he was going to withdraw from the case. Accordingly a motion was filed by defendant Rankins for appointment of a Bar Association attorney. On January 6, 1977, attorney Lawrence Galka was appointed to represent Rankins. The case was called

for trial on six occasions thereafter. Rankins once demanded trial but never sought a change of counsel. When the case was again called for trial, defendant's mother told the court that her brother had reengaged attorney Sam Adam who was then away on vacation. The trial court required the case to go to trial. The record shows no further contact with the court in this case by attorney Sam Adam. Rankins urges here that his rights were violated in that the court should have waited and continued the case to ascertain if the former attorney would reappear.

■■ It has been strongly held by the courts of Illinois that the right of a defendant to counsel of his own choice should be carefully protected. However, the courts have been equally diligent in not permitting the right to counsel to be used as a vehicle for undue delay. (*People v. Finley* (1978), 63 Ill. App. 3d 95, 104, 379 N.E.2d 645, and cases there cited.) We conclude that the rights of the defendant were not violated by the trial court in this regard.

Similarly, Rankins urges here that he should have been allowed a severance in accordance with the motion which his counsel made before trial. We reject this contention. The record shows an oral motion for severance made by trial counsel for Rankins. The motion was made long before trial and was never again raised. The defendants were jointly indicted. The rule, therefore, is applied that they should be tried together unless the trial court considers, in the exercise of discretion, that separate trials should be granted in the interest of justice. It has been repeatedly held that the issue here is " '* * * whether the defenses are of such an antagonistic nature that a severance is imperative to insure a fair trial.' " *People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356, quoting from *People v. Gendron* (1968), 41 Ill. 2d 351, 356-57, 243 N.E.2d 208.

■■ In the case before us, we find no antagonism between the two defenses. There is no issue here of an inculpatory statement made by one defendant which implicates the other. There is nothing to show that the conviction of either of the defendants would have any effect upon the guilt or innocence of the other. Under these circumstances the denial of the motion for severance was completely within the discretion of the trial judge.

## VI.

Defendant Rankins finally urges that the trial court erred in refusing to admit a photograph of the rear interior of the automobile of the deceased which allegedly showed a knife upon the back seat. A police officer testified that he saw nothing on the back seat of the car. After further questioning and viewing the photograph, the officer stated he did not recall seeing the knife on the back seat. The photograph shows a closed pocketknife. The court was informed that no knife had ever been

recovered by the police at the scene. The People offered in evidence, and the court received without objection, a photograph showing the driver's side of the interior of the car and the snow about the location of the car. In closing argument, counsel for defendant Rankins argued that the State had failed to show the back seat or the back floor of the car. The State urges that this was an attempt by defense counsel to show that there was a gun in the back seat of the car.

■■ We see no error in connection with the exclusion of this photograph. There is no evidence to show that the deceased ever had any weapon in his possession. Furthermore, as above shown, there was no evidence of self-defense. The evidence is overwhelming that these defendants were the aggressors who used unjustifiable force against the deceased who sought only to flee. In addition, the photograph was a piece of demonstrative evidence. Admission of this type of evidence was within the discretion of the trial court. (*People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848.) We find no abuse of discretion in this regard.

Upon consideration of the entire record and of all of the contentions raised, we find no reversible error and the judgments as to both defendants are accordingly affirmed.

Judgments affirmed.

O'CONNOR and CAMPBELL, JJ., concur.