THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERALD A. SMITH, a/k/a TERRY SMITH, Defendant-Appellant.

Fifth District   No. 5—86—0047

Opinion filed February 9, 1988.—Rehearing denied March 1, 1988.

Daniel M. Kirwin and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Randall J. Rodewald, State's Attorney, of Chester (Kenneth R. Boyle,

Stephen E. Norris, and Kathy J. Geer, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Terald A. Smith, was convicted after a jury trial in the circuit court of Randolph County of armed robbery, armed violence and attempt (murder). He was sentenced to two concurrent 12-year terms of imprisonment for armed robbery and armed violence, and a concurrent term of 17 years' imprisonment for attempt (murder). Defendant was also ordered to pay court costs and restitution to the victim's insurance company in the amount of $1,500. Defendant appeals his convictions and sentences. We affirm.

On the evening of March 19, 1985, the victim, Bryan Heck, was working at Sonny's Conoco gas station near Evansville, Illinois. Sometime prior to 8:30 p.m. he observed a red Ford Courier pickup truck drive by the station several times. The truck pulled through the station lot on one occasion and Heck recognized the driver, defendant, as someone with whom he had gone to school.

At approximately 8:30 p.m. defendant walked into the station, said that he had run out of gas, and asked for a gas can. Heck said that he had one out back and started for the back door. Defendant then began stabbing Heck from behind. Heck fell to the ground and defendant turned to leave; however, when defendant saw Heck move he returned to stab him a few more times. Heck was stabbed approximately 34 times. Defendant then went inside the station and Heck ran to a neighbor's house for help. Heck identified defendant as his assailant immediately after the crime and at trial.

The station cash register was found to have been emptied of money, and when defendant was arrested a bloodstained roll of money was found in his jacket. The money totaled $255. Defendant also signed a full written confession which was admitted into evidence at his trial.

Defendant presented the defense of insanity at his trial. A psychiatrist testified on defendant's behalf that defendant was neither feigning nor malingering, that he had the mental disease of major depression aggravated by mixed substance abuse, and that this disease prevented defendant from appreciating the criminality of his conduct and from conforming his behavior to the requirements of the law.

Defendant was convicted on all three counts. He raises five issues on appeal.

Defendant first argues that the trial court erred in failing to suppress his confession because his assertion of his right to remain silent

was not scrupulously honored. Defendant was arrested at approximately 9 p.m. on March 19, 1985, by the Sparta, Illinois, police department. Illinois State trooper Ivan Castens, who was investigating the crimes, met defendant at the Sparta police department and advised defendant that he was being detained pursuant to an armed robbery investigation. Trooper Castens provided defendant with a written copy of his *Miranda* rights and read them aloud to defendant from an identical form. Defendant acknowledged that he understood each of his rights and signed the form, indicating that he understood his rights, at approximately 9:55 p.m. Defendant did not appear to be under the influence of alcohol or narcotics. Defendant told Trooper Castens, "I have nothing to say" and he was not questioned. Randolph County Sheriff's Deputy Leifer was present during these exchanges.

Defendant was then transported to the Randolph County jail by Deputy Leifer. Defendant was "booked" and required to change from his own clothing into jail clothing. His clothing was searched by the sheriff and a roll of bloodstained money was found in his jacket. Defendant was then brought into a room with the sheriff, Trooper Castens and Deputy Leifer. The sheriff showed defendant the roll of money and said, "Look what I found in your coat." Defendant then indicated that he was ready to talk and said, "I did it." Trooper Castens immediately informed defendant again of his *Miranda* rights, which defendant indicated he understood. This occurred at approximately 11:40 p.m. on March 19, 1985. Defendant signed a waiver of rights form and confessed to the crime. Trooper Castens reduced the confession to writing and defendant signed the written confession.

Defendant argues on appeal that he asserted his right to remain silent at the Sparta police department, but that this right was not scrupulously honored when Sheriff Currat confronted him with the roll of money. He argues that Sheriff Currat intended to elicit a response from defendant, and thus violated defendant's right to silence. Consequently, his confession should have been suppressed at trial.

■ If an individual indicates, in any manner, either prior to or during questioning, that he wishes to remain silent, the interrogation must cease. (*Miranda v. Arizona* (1966), 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627-28.) However, there is no *per se* proscription against renewed questioning by, and at the initiation of, the police once the person in custody has indicated a desire to remain silent. Instead, the admissibility of subsequent statements depends upon whether the defendant's right to terminate questioning was scrupulously honored. *Michigan v. Mosley* (1975), 423 U.S. 96, 104, 46

L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.

In determining whether a defendant's right to remain silent was scrupulously honored, a number of factors must be examined. Two of the most crucial are whether there was a significant period of time, during which there was a complete cessation of questioning, between the defendant's exercise of his right to remain silent and the reinterrogation, and whether the reinterrogation was preceded by a fresh set of *Miranda* warnings. (*People v. Pleasant* (1980), 88 Ill. App. 3d 984, 988, 411 N.E.2d 132, 135.) Additional factors to be considered are whether a different officer conducted the second questioning, whether a completely different subject matter was involved in the second questioning, and whether there is something in the record which would justify or explain the defendant's reconsideration of his decision to remain silent. *Pleasant*, 88 Ill. App. 3d at 988, 411 N.E.2d at 135.

In this case a period of 1½ hours had elapsed between defendant's assertion of his right to remain silent and the reinterrogation. This has been held to be a significant period of time under *Michigan v. Mosley*. (*People v. Young* (1983), 115 Ill. App. 3d 455, 461, 450 N.E.2d 947, 953.) During this period there was a complete cessation of all questioning. A different officer (Sheriff Currat) conducted the second interrogation than had conducted the first interrogation (Trooper Castens). Further, there is something in the record that justifies or explains the defendant's reconsideration of his decision to remain silent, *i.e.* the discovery of new, incriminating evidence.

In *People v. Savory* (1980), 82 Ill. App. 3d 767, 773, 403 N.E.2d 118, 123, *cert. denied* (1981), 449 U.S. 1101, 66 L. Ed. 2d 827, 101 S. Ct. 896, it was held that the occurrence of some event, communicated to the defendant, which might indicate the reasonableness of the reconsideration of his position, serves to dissipate or attenuate the inherent compulsion of a custodial setting. In the instant case, defendant was only reinterrogated after the discovery, by the police, of a bloodstained roll of money in defendant's jacket—evidence which would tend to incriminate defendant. The discovery of this new evidence was communicated to defendant and could reasonably have caused defendant to reconsider his decision to remain silent. (See *In re D.W.S.* (1981), 99 Ill. App. 3d 1035, 1037-39, 426 N.E.2d 284, 286-88.) The revealing of incriminating evidence against a defendant does not constitute psychological coercion in itself. *People v. Gorham* (1978), 66 Ill. App. 3d 320, 324, 384 N.E.2d 6, 10.

Although one of the factors considered by the court in *Michigan v. Mosley* was that the second interrogation was about a different

crime, the holding in that case is not limited to its own facts. (*People v. Savory* (1980), 82 Ill. App. 3d 767, 773, 403 N.E.2d 118, 123.) Thus, that the defendant was questioned about the same crime does not alone render the second interrogation unlawful. *People v. Young* (1983), 115 Ill. App. 3d 455, 462, 450 N.E.2d 947, 954.

■ Finally, that defendant was not again advised of his *Miranda* rights prior to being shown the roll of money does not "taint" his subsequent, warned confession. After being shown the money, defendant indicated that he was ready to talk and said "I did it." He was immediately stopped and advised of his *Miranda* rights. It was after being so advised that defendant made a full confession. The United States Supreme Court has held that,

> "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." (*Oregon v. Elstad* (1985), 470 U.S. 298, 314, 84 L. Ed. 2d 222, 235, 105 S. Ct. 1285, 1296.)

In the instant case, there is no evidence of deliberately coercive or improper tactics. On the contrary, it appears that the authorities took every precaution to protect defendant's rights. Defendant had, in fact, been fully advised of his *Miranda* rights approximately 1½ hours prior to the second interrogation. His confession appears voluntary in all respects.

We find that the defendant's right to remain silent was scrupulously honored and that his confession was voluntary. The trial court's denial of defendant's suppression motion was not against the manifest weight of the evidence and therefore will not be disturbed on appeal. See *People v. Lakes* (1978), 60 Ill. App. 3d 271, 275, 376 N.E.2d 730, 732.

Defendant's second argument is that the trial court erred in failing to instruct the jury on the definition of the term "preponderance of the evidence." Defendant readily admits that his counsel failed to tender such an instruction, but argues in the alternative that the trial court was obligated to so instruct the jury *sua sponte*, or that his counsel's failure to tender the instruction constituted ineffective assistance of counsel. Defendant argues that he was thus deprived of a fair trial and seeks reversal and remand of this cause for a new trial.

The jury was properly instructed that:

"When the defense of insanity has been presented during the trial, the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity."

Defendant argues that the term "preponderance of the evidence" should have been defined, to make it clear to the jury that it is a lesser burden of proof than the State's burden to prove defendant guilty beyond a reasonable doubt. Defendant points out that Illinois Pattern Jury Instructions, Criminal, No. 4.18 (2d ed. 1982), defines the term preponderance of the evidence as "whether, considering all the evidence in the case, the proposition on which the defendant has the burden of proof is more probably true than not true."

We find that defendant has waived any error with respect to this issue by his failure to tender the appropriate instruction, that the failure to give the instruction is not such a substantial defect that the interests of justice require relaxation of the waiver rule, and that failure to tender the instruction does not constitute ineffective assistance of counsel.

■ It is well settled that the burden of preparing jury instructions is on the parties, and failure to request an instruction at trial or in a post-trial motion results in waiver of the claimed error. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 234, 424 N.E.2d 610, 615.) This waiver rule will be relaxed only in the event of "substantial defects" in jury instructions and only if the "interests of justice require." (107 Ill. 2d. R. 451(c); *Johnson*, 98 Ill. App. 3d at 234, 424 N.E.2d at 615.) This is a limited exception to the waiver rule, to be used to correct grave errors or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

■ The failure to give the omitted instruction in the instant case is not a substantial defect, nor is this case close factually. This case is similar to *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513, in which failure to define the term "reasonably believes," as used in the instruction defining self-defense, was found not to constitute a substantial defect. The supreme court pointed out that the jury had been instructed on the substance of defendant's case—self-defense. The court found that the definitional instruction was not so basic to the given instruction on self-defense that failure to give it resulted in an unfair trial. See also *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

In the instant case, the jury was instructed as to the substance of defendant's case—insanity. The only omission defendant complains of

is that the instructions did not define "preponderance of the evidence," not that the jury was unaware that this was the appropriate burden of proof. Furthermore, during *voir dire* the court defined the term "preponderance of the evidence" and emphasized the difference between it and "beyond a reasonable doubt." The failure to define the term in the jury instructions was not a substantial defect resulting in an unfair trial.

Nor is this case close factually. Although defendant presented sufficient evidence to warrant an instruction on the defense of insanity, the evidence did not prove defendant's insanity even by a preponderance of the evidence. The evidence of defendant's guilt is overwhelming. He was positively identified by the victim and admitted his guilt in a written confession to the police.

Defendant contends that this case is similar to *People v. Gray* (1981), 99 Ill. App. 3d 851, 426 N.E.2d 290, in which we held that failure to define the term *"prima facie,"* as used in an issues instruction relating to the offense of deceptive practices, was prejudicial and required reversal. We disagree. As we pointed out in *Gray*, the term *"prima facie"* has two distinct meanings and is ambiguous and often misleading. However, the term "preponderance of the evidence" has only one meaning and is neither ambiguous nor misleading. Furthermore, we were concerned in *Gray* that use of the term *"prima facie"* might confuse the jury as to who carried the burden of proof. That is not a concern in the instant case.

The failure to give the instruction defining the term "preponderance of the evidence" is not a substantial defect which deprived defendant of a fair trial. Defendant has thus waived any error with respect to this issue.

■ Defendant argues that the failure of his counsel to tender the instruction constitutes ineffective assistance of counsel. In order to establish ineffective assistance of counsel, defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability, sufficient to undermine confidence in the verdict, that, but for counsel's deficient performance, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2065, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, 473 N.E.2d 1246, 1255.) A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies. If it is easier to dispose of a case on the ground of lack of sufficient prejudice, that course should be followed. (*Strickland v. Wash-*

*ington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70; *People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256.) In light of our finding that failure to give the omitted instruction was not a substantial defect which deprived defendant of a fair trial, we find that defendant was not prejudiced by his counsel's alleged deficiencies. Thus, defendant has not established that his counsel's assistance was ineffective.

Defendant's third issue on appeal is whether the trial court erred in instructing the jury on the offense of attempt (murder). The jury was instructed that it could find defendant guilty if it found that he took a substantial step toward the commission of the offense of murder, with the intent to commit murder. The definitional instruction for murder included the mental states of not only intent to kill, but also intent to do great bodily harm.

The State properly concedes that the instructions were erroneous, as attempt (murder) requires the specific intent to kill. (*People v. Trinkle* (1977), 68 Ill. 2d 198, 201, 369 N.E.2d 888, 890.) However, the State argues that defendant has waived this error by his failure to object to the instruction at trial or raise it in his post-trial motion. We agree.

In *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, the Illinois Supreme Court held that failure to object to just such an instruction as involved in the instant case waives the issue for appeal. The court recognized, however, that the waiver rule is not absolute and does not apply to *"substantial defects* in instructions *if* the *interests of justice require."* (Emphasis in original.) (75 Ill. 2d at 11, 387 N.E.2d at 336.) The court emphasized that this is a limited exception to be used to correct grave errors or where the case is close factually and fundamental fairness requires that the jury be properly instructed. Finally, the court found that the error in the instruction was not a substantial defect and that the case was not closely balanced. Thus the error did not deprive defendant of a fair trial.

In the instant case, the evidence of defendant's intent to kill was clear and overwhelming. The victim was stabbed approximately 34 times in the neck, back and shoulder with a knife, the blade of which was 5⅛ inches long and 5/8 of an inch wide. Defendant continued to stab the victim after he had fallen to the ground. Defendant started to leave the victim, but when he saw the victim move, returned and stabbed the victim several more times. Defendant then left the victim lying on the ground. Even had the proper instruction been given, the jury could not have reasonably found defendant not guilty. (See also *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343 (where similar er-

ror, though objected to, was found to be harmless).) Finally, we point out that, unlike *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, upon which defendant relies, the information in the instant case properly specifies that defendant had the intent to kill. The error in this case was not grave or substantial, and this case is not close factually. Therefore we find that defendant has waived any error in the attempt (murder) instructions.

We also find that defendant has waived any error with respect to his fourth issue, that the trial court erred in giving to the jury only one special verdict form for not guilty by reason of insanity, which applied to all three of the charged offenses. Section 115—4(j) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j)) requires that, when the defense of insanity has been raised at trial, the jury must be given a special verdict form of not guilty by reason of insanity as to each offense charged. However, a failure to raise a timely objection to the verdict forms waives any error. *People v. Rhoads* (1979), 73 Ill. App. 3d 288, 315, 391 N.E.2d 512, 531-32.

Defendant did not object to the use of one special verdict form at trial, nor did he raise it in his post-trial motion. Defense counsel was specifically asked during the jury instruction conference if he had any objection to giving only one special verdict form for not guilty by reason of insanity. He stated that his only objection was to the guilty but mentally ill instructions and verdict forms. He also failed to raise this issue in his post-trial motion. Thus, defendant has not preserved this issue for review.

Nor does the verdict form constitute a substantial defect which deprived defendant of a fair trial. Unlike the case relied upon by defendant, *People v. Lipscomb* (1977), 46 Ill. App. 3d 303, 360 N.E.2d 988, the offenses charged in the instant case all arose out of the same act. Defendant's only motivation in the instant case was robbery. The other offenses were committed in furtherance of that aim and were all part of the same act. It is unlikely that the jury would have found defendant not guilty by reason of insanity as to one of the offenses and reached a different verdict as to the others. See *People v. Rhoads* (1979), 73 Ill. App. 3d 288, 315, 391 N.E.2d 512, 532.

Furthermore, the defendant was proved sane beyond a reasonable doubt. Defendant has waived any error with respect to the use of a special verdict form of not guilty by reason of insanity.

Defendant's final issue on appeal is whether the trial court abused its discretion in sentencing him to two concurrent 12-year terms of imprisonment and one concurrent term of 17 years' impris-

onment. The imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, the sentence of the trial court may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) A trial judge's decisions in regard to sentencing are entitled to great deference and weight. *Perruquet*, 68 Ill. 2d at 153, 368 N.E.2d at 884.

The record indicates that the trial court carefully considered the statutory factors in aggravation and mitigation. The trial court also considered the brutality of the attack and pointed out that, had defendant fulfilled his intention, the victim would have died. The court found in mitigation only that defendant had no substantial history of criminality.

Defendant was convicted of three Class X felonies carrying a mandatory prison term of between 6 and 30 years. The sentences imposed were well within the statutory limits. The trial court did not abuse its discretion in sentencing defendant.

For the foregoing reasons the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

HARRISON, P.J., and KARNS, J., concur.